**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| IRIS CHRISTEL JOHNSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 1-16-cv-479 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | Judge Christopher H. Steger |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's final decision denying Iris Johnson's ("Plaintiff") claim for Disability Insurance Benefits ("DIB") as provided by the Social Security Act. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Sixth Circuit [Doc. 12]. For the reasons stated herein, Plaintiff's Motion for Judgment on the Administrative Record [Doc. 9] shall be **DENIED**; the Commissioner's Motion for Summary Judgment [Doc. 13] shall be **GRANTED**; and the decision of the Commissioner shall be **AFFIRMED**. Judgment in favor of the Commissioner shall be entered.

### II.    Background

#### A.  Procedural History

In December 2013, Plaintiff applied for disability insurance benefits under Title II of the

1

Social Security Act (Act), 42 U.S.C. §§ 401-434 (Tr. 265), alleging an onset date of disability of January 1, 2010 (Tr. 124). The agency denied Plaintiff's claim initially and on reconsideration (Tr. 178, 189). Plaintiff requested and obtained a hearing before an administrative law judge (ALJ) in September 16, 2015 (Tr. 117-168). During the hearing, Plaintiff amended her alleged onset date of disability to July 1, 2012 (Tr. 165). By a decision dated February 3, 2016, ALJ Beverly Susler Parkhurst denied Plaintiff's claim for disability benefits (Tr. 103-115). On September 30, 2016, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner. Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner.

**B. The ALJ's Findings**

After considering the entire record, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2014.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 2012, through her date last insured of December 31, 2014 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: hypertension, hyperlipidemia, GERD, degenerative joint disease, migraines, osteoporosis and history of complex fracture (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b),

meaning that the claimant is capable of lifting or carrying 20 pounds occasionally, lifting or carrying 10 pounds frequently, sitting for 6 hours in an 8 hour workday, and standing or walking for 6 hours in an 8 hour workday. The claimant is capable of climbing ramps and stairs, twisting, climbing, balancing, stooping, crawling, crouching and kneeling for up to 1/3 of the day. The claimant is precluded from climbing ladders, ropes and scaffolds. The claimant must avoid concentrated exposure to hazards, moving machinery and heights.

6. Through the date last insured, the claimant was capable of performing past relevant work as an administrative clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CPR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 1, 2012, the alleged onset date, through December 31, 2014, the date last insured (20 CPR 404.1520(1)).

[Tr. 105-06, 109].

## C. Relevant Facts

### 1. Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 57 years old at the time of the hearing before the ALJ on September 16, 2015 (Tr. 137). She was 54 years old at the time of her amended, alleged onset date of disability of July 1, 2012. She is a high school graduate with past relevant work as an administrative clerk, semi-skilled, with a light exertional requirement (Tr. 137, 148).

### 2. Plaintiff's Testimony and Medical History

The ALJ and the parties have discussed adequately Plaintiff's medical history and testimony. The Court will discuss the Plaintiff's medical history and testimony only as it relates to the issues addressed in this case.

### III.  Analysis

#### A.  Standard of Review

To establish disability under the Social Security Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled.  20 C.F.R. § 404.1520.  The following five issues are addressed in order:  (1) if the claimant is engaging in substantial gainful activity she is not disabled; (2) if the claimant does not have a severe impairment she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment she is disabled; (4) if the claimant is capable of returning to work she has done in the past she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy she is not disabled.  *Id.*  If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step.  20 C.F.R. § 404.1520; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990).  Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which she can perform considering her age, education and work experience.  *Richardson v. Sec'y, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner

are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389 (1971); *Landsaw v. Sec'y, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

**B.  Issues**

Plaintiff raises three issues in her appeal from the Commissioner's decision denying her

benefits:

1. Plaintiff asserts the Commissioner's finding that Plaintiff is capable of light work is not supported by substantial evidence because the ALJ improperly evaluated the medical evidence, her credibility, the opinion evidence, and the lay evidence in the administrative record.

2. Plaintiff asserts the ALJ committed reversible error by failing to apply the Grids, 20 C.F.R. Appendix 2 to Subpart P of Part 404, to find her disabled as of her fifty-fifth birthday; and

3. Plaintiff asserts the Commissioner committed reversible error by not ordering a rehearing on the ground that Plaintiff did not have a full and fair hearing due to a lack of competent representation at the hearing.

**C. Analysis**

**1. Evaluation of the Evidence**

Following a thorough review of the record, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in the regulations (Tr. 106). Specifically, the ALJ found that Plaintiff was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours in an 8-hour workday; and standing and walking for 6 hours in an 8 hour workday (Tr. 106). The ALJ further found that Plaintiff could occasionally twist, balance, stoop, crawl, crouch, kneel, and climb ramps and stairs (Tr. 106). The ALJ found that Plaintiff could never climb ladders, ropes and scaffolds, and she must avoid concentrated exposure to hazards, moving machinery and heights (Tr. 106). Plaintiff asserts that the ALJ did not apply properly assesses Plaintiff's impairments and pain levels, and, therefore, the ALJ erroneously concluded that she had the RFC for light work.

**a.) Evaluation of Plaintiff's Impairments.**

Plaintiff claims that the ALJ erred by failing to find her right eye retina tear and vision problems to be a severe impairment and by failing to consider this impairment in assessing her

RFC.  To be found severe, an impairment must significantly limit the claimant's ability to perform basic work activities.  *See Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (citing 20 C.F.R. §§ 404.1509, 404. 521).  Plaintiff has the burden of showing that an impairment is severe and that it meets the 12-month durational requirements of the Act.  *Id.*

At the administrative hearing on September 16, 2015, Plaintiff alleged problems with her vision (Tr. 127).  She testified that she had a retina tear in her right eye that was repaired "some years ago" (Tr. 127).  She also said she saw an eye doctor in December 2014, because she had double vision and floaters in her vision (Tr. 127).

The ALJ did not discuss Plaintiff's alleged eye problems in the written decision.  The relevant period in this case spans from July 1, 2012 (the alleged onset date), through December 31, 2014 (the date of last insured) (Tr. 103).  Medical records during this time did not show a medically determinable severe eye impairment.  While Plaintiff reported having a retina tear that was repaired "some years ago," there is no medical evidence that this condition affected Plaintiff's ability to work prior to her alleged onset date or that it continued during the relevant period. The medical evidence shows that Plaintiff denied blurred vision and reported no vison problems to her primary care providers in April, July, and December 2013 (Tr. 345, 348, 351).  Likewise, Plaintiff denied impaired vision or new onset of visual changes at her annual gynecologist examination in December 2013 (Tr. 366).   Plaintiff  again denied blurred vision and reported no vision problems to her primary care providers in February, March, June, July, and August 2014 (Tr. 392, 395, 399, 594, 597, 600).   Plaintiff further denied blurred vision or double vision in September and October 2014 (Tr. 590, 592).  In addition, Plaintiff did not allege any vision problems in her disability application (Tr. 282, 291-97).  In January 2014,

Plaintiff reported using glasses/contact lenses, but she had no problems seeing (Tr. 297-98). In February 2014, Plaintiff reported no changes in her medical condition (Tr. 308). In May 2014, Plaintiff reported a new problem with her inner ear and dizziness, but she did not mention any vision problems (Tr. 320). Furthermore, Plaintiff continued to drive a car through the date of the hearing, suggesting that her vision was not significantly impaired (Tr. 108, 128). While she reported flashes and floaters in her field of vision in December 2014, she testified that the eye doctor could not find anything wrong (Tr. 127). Indeed, treatment notes from December 22, 2014, indicate that Plaintiff had 20/25 visual acuity in her right eye and 20/15 visual acuity in her left eye (Tr. 465). At a follow-up visit on January 19, 2015, Plaintiff reported that she felt like there was a piece of fuzz in her right eye (Tr. 464). However, she indicated that the problem only slightly affected her visual acuity (Tr. 464). Upon examination, Plaintiff had 20/30 visual acuity in her right eye, with 20/25 pinhole visual acuity, and 20/20 visual acuity in her left eye (Tr. 464). At a primary care appointment in March 2015, Plaintiff denied blurred vision (Tr. 584).

As Plaintiff points out, treatment notes in September 2015 documented diagnoses of nuclear sclerosis cataract, dry eye syndrome, right eye round hole of retina without detachment, vitreous degeneration (floaters), and dermatochalasis (baggy eyelids) (Tr. 500). However, the diagnosis of an impairment says nothing about the severity of the condition or the effect of the condition on the ability to perform basic work functions. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition"); *Minton v. Berryhill*, Case No. 3:16-cv-462-HGB, 2017 WL 3996406, at *3 (E. D. Tenn. Sept. 11, 2017) ("A diagnosis alone, however, says nothing about the severity of a

condition.")  Moreover, this is evidence of her eye condition *after* the date of last insured.  The medical evidence, prior to her date of last insured status, affirmatively indicated that Plaintiff did not suffer from a severe eye condition at that time.  Consequently, to the extent that medical evidence after her date of last insured status did indicate existence of a severe eye impairment, that evidence was not relevant to the ALJ's disability analysis.  *Blackburn v. Comm'r of Soc. Sec.*, Case No. 4:11-cv-58, 2012 WL 6764068 *5 (E.D. Tenn. Nov. 14, 2012) ("Medical evidence dated after a claimant's expiration of insured status is only relevant to a disability determination where the evidence 'relates back' to the claimant's limitations prior to the date last insured.") (quoting *May v. Astrue*, No. 4:10-CV-1533, 2011 WL 3490186, at *5 (N. D. Ohio June 1, 2011)); *see also Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value.").

Plaintiff cites SSR 96-5p in support of her argument that the ALJ should have discussed the medical evidence related to her vision.  SSR 96-5p is inapplicable, however, because it anticipates that a medical source would have offered an opinion as to disability on the subject at issue: "If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."  SSR 96-5p.  Plaintiff points to no medical source opinion regarding Plaintiff's vision issues, and thus, SSR 96-5p does not apply.

### b.) Evaluation of Plaintiff's Testimony and Alleged Limitations.

Plaintiff argues that the ALJ erred in not finding her testimony fully credible.    An ALJ's credibility determination is entitled to "great weight and deference," and judicial review

is limited to determining whether the ALJ's reasons for discrediting the allegations are reasonable and supported by substantial evidence in the record. *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 531 (6th Cir. 1997); *see also Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 788 (6th Cir. 2017) (holding that while an ALJ's credibility determination must be supported by substantial evidence, it is accorded "special deference"), *petition for cert. filed,* __U.S.L.W. __, (Feb. 21, 2018) (Case No. 17-1184).

In this case, the ALJ discussed several valid reasons for discounting Plaintiff's testimony and alleged limitations. First, the ALJ found that the medical evidence did not support Plaintiff's claim of significant pain and physical limitations (Tr. 108). Although not determinative of credibility, a lack of objective medical evidence supporting a claimant's alleged limitations is one factor an ALJ may consider. *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013); *see also* C.F.R. 404.1529(a) (in effect until March 27, 2017) (objective medical evidence is one factor the ALJ may consider in assessing the severity of a claimant's pain.)

The ALJ considered that Plaintiff's physical examinations were generally normal (Tr. 108). While Plaintiff complained of pain in various joints and muscles, physical examinations with her primary care providers showed no joint pain or swelling (Tr. 345-46, 349, 352, 393, 396, 400, 588, 590, 592, 595, 598, 601). Plaintiff had a normal gait and a full range of motion in all extremities (Tr. 346, 349, 352, 393, 396, 400, 595, 598, 601). She had no peripheral edema and only mild arthritic changes in her hands (Tr. 346, 349, 352, 393, 396, 400, 588, 590, 592, 595, 598, 601). Plaintiff had no focal neurological deficits (Tr. 346). She was advised to get regular exercise and watch her diet more closely (Tr. 347, 354, 394, 398, 401, 589, 596, 599,

602).  Likewise, annual gynecological examinations in December 2012 and December 2013 showed no spinal tenderness and no cervical tenderness (Tr. 367, 381).  Plaintiff attended a neurology consultation for complaints of neck pain in March 2014, but a physical examination showed no evidence of scoliosis, no swelling or deformity, normal heel-to-toe gait, and normal muscle bulk and tone.  The physician prescribed a medication, Meclizine, to use as needed for dizziness (Tr. 482).  In April 2014, Plaintiff reported a great improvement in her sensations of dizziness and only required the medication three times (Tr. 406).

The ALJ noted that Plaintiff complained of leg and back pain at a neurology consultation in July 2014, but a physical examination showed no swelling or deformity, intact cranial nerves, normal heel-to-toe gait, and normal muscle bulk and tone (Tr. 108, 433-34).  An EMG study of Plaintiff's lower extremities was normal (Tr. 108, 433, 440-42).  The EMG showed no peripheral neuropathic or radiopathic process, and no suggestion of any entrapment of the lower extremity nerves (Tr. 442).  The following month, Plaintiff reported that stretching exercises had helped some with her leg pain (Tr. 430).  Upon examination, she had intact cranial nerves, normal heel-to-toe gait, and normal muscle bulk and tone (Tr. 430-31).

The ALJ also noted that Plaintiff's blood pressure, cholesterol, and GERD symptoms were controlled with medication and diet (Tr. 107, 345, 348, 351, 392, 395, 399, 590, 592, 594, 597, 600).  Impairments that are controlled with treatment are not disabling.  *See Smith v. Comm'r of Soc. Sec.*, 564 F. App'x 758, 763 (6th Cir. 2014) (evidence that prescribed medication can improve medical issues supports denial of disability benefits) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987)).  The ALJ also noted that Plaintiff took over the counter ibuprofen and a low dose of prescription Tramadol, a non-

11

narcotic pain reliever, as needed for joint and musculoskeletal pain during the relevant period (Tr. 107, 345, 348, 351, 365, 392, 395, 399, 467, 590, 592, 594, 597, 600). "[S]uch modest treatment [is] inconsistent with a finding of total disability." *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) ("Curler was prescribed hydrocodone and tramadol to address her low back pain. All three medications are used to treat only moderate to moderately severe pain. We have generally found such modest treatment to be 'inconsistent with a finding of total disability.'") (quoting *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011)) (internal citations omitted); 20 C.F.R. § 404.1529(c)(3) (ALJ to consider type, dosage, and effectiveness of medications).

In addition, the ALJ considered that Plaintiff's pain improved with treatment and stretching exercises (Tr. 108, 502). Specifically, the ALJ noted that Plaintiff discharged herself from physical therapy and reported significant improvement in her symptoms (Tr. 108, 468-69, 502). Plaintiff began physical therapy for complaints of neck pain in March 2014 (Tr. 468-69, 535-70). By May 2014, she rated her pain a "0 out of 10" (Tr. 535). The physical therapy report indicated that she had 5/5 muscle strength with cervical flexion and extension with only mild muscle tenderness (Tr. 536). Dr. Clairmont, a head and neck specialist, noted that Plaintiff's symptoms were 95% better following physical therapy and an MRI scan of her brain was normal (Tr. 473). In August 2014, Plaintiff told her neurologist that stretching exercises helped some with her leg pain (Tr. 430).

Plaintiff returned to physical therapy in October 2014 with complaints of mid-back pain (Tr. 529). She initially reported very painful and tight muscles in her mid-back, with a pain rating of "7 out of 10" (Tr. 502, 530). By December 2014, Plaintiff's pain decreased to "2 out of

10" (Tr. 108, 502). She reported functioning within normal limits (Tr. 502). She stated that exercises and stretches really helped (Tr. 502). She was able to do most of her usual work and engage in her recreational activities (Tr. 507). She also chopped wood without pain though she experienced pain later that evening and for the next two days. However, exercising and applying ice and heat helped (Tr. 507). Plaintiff reported that she could concentrate fully when she wanted with slight difficulty (Tr. 508). She could also bend forward to pick up an object without pain (Tr. 509). She reported all functional activities are "almost pain free" (Tr. 509). At a follow up visit with her primary care provider, Plaintiff stated that her pain had resolved and she was able to function normally again (Tr. 587). The ALJ found that such evidence did not support Plaintiff's claim of disabling limitations through her date last insured of December 31, 2014 (Tr. 108).

Plaintiff argues that the ALJ did not discuss all the medical evidence and failed to consider the objective findings that were consistent with her symptoms and testimony. Despite Plaintiff's argument, the ALJ was not required to discuss every piece of evidence in the record. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) ("But the ALJ was not required to discuss all the evidence, as long as her factual findings as a whole show that she implicitly considered the record as a whole.") (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006)). Plaintiff notes that x-rays taken in August 2014 showed a mild compression deformity of T12, age indeterminable; dextroscoliosis; and degenerative disc disease at the lumbar spine (Tr. 415, 417, 450, 452). While the ALJ did not mention the x-rays, the ALJ found that Plaintiff had severe impairments of degenerative joint disease, osteoporosis, and a history of complex fracture (Tr. 105). After considering the record as a whole, the ALJ

13

found that these impairments had some effect on Plaintiff's ability to perform work activities, but did not cause disabling limitations as Plaintiff alleged (Tr. 105-08).

Furthermore, the ALJ noted that the record contained some inconsistencies that cast doubt on Plaintiff's testimony and alleged limitations (Tr. 108). In a January 2014 Function Report, Plaintiff stated that she could walk no more than two or three blocks at a time before resting (Tr. 108, 297). However, at the hearing, Plaintiff testified that she had no problems walking unless she was carrying something (Tr. 108, 139).

Additionally, the ALJ noted that Plaintiff's alleged limitations were inconsistent with the information she provided to her physicians (Tr. 108). For instance, although Plaintiff alleged difficulty concentrating, she told her medical providers that she home-schooled her son, who was a junior in high school, and she worked a couple hours per week in the family HVAC business and completed the business's taxes (Tr. 151, 297, 466, 468, 502). Similarly, while Plaintiff testified that she could only bend for 5 to 10 minutes, stand for 30 minutes, and sit for 30 minutes at a time, she told her medical providers that she was actively gardening, working in the yard, chopping wood, and cleaning house during the relevant period (Tr. 139, 468, 471, 502, 504). Moreover, as discussed above, Plaintiff reported improvement in her symptoms with treatment and very little residual pain following physical therapy (Tr. 108, 430, 502, 535, 587). *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("The ALJ reasonably discounted Temples' testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record.").

The ALJ also considered Plaintiff's daily activities (Tr. 108). The ALJ noted Plaintiff reported that she brushed, fed and watered her dog; cooked simple meals; folded and ironed

clothing; did light sewing; loaded the dishwasher; cleaned countertops; and vacuumed (Tr. 108, 290-99). She even testified that she sometimes went hiking even though she could no longer carry her own pack (*Id.*). She remained capable of driving a vehicle and she went grocery shopping with her son (Tr. 108). Contrary to Plaintiff's contention, the ALJ did not equate her activities of daily living to an ability to perform light work. *See* Pl.'s Br. at 15-16. Rather, the ALJ simply considered Plaintiff's activities as one of many factors that were inconsistent with her testimony of disabling limitations. An ALJ may consider daily activities as one factor in the evaluation of subjective complaints. *See* 20 C.F.R. § 404.1529(c)(3); *Temples*, 515 F. App'x at 462.

Overall, the ALJ found that the evidence did not support Plaintiff's allegations of disabling pain (Tr. 108). This conclusion is well supported by the objective medical evidence; by the Plaintiff's own statements regarding her activities and her pain levels to her medical providers during her visits for medical treatment; and, to a lesser extent, by the Plaintiff's own statements regarding her activities in her hearing testimony. Despite Plaintiff's disagreement with this conclusion, the ALJ properly considered her testimony and alleged limitations in a manner that was consistent with agency regulations and policies. *See* 20 C.F.R. § 404.1529.

### c.) Consideration of the Opinion Evidence.

Plaintiff argues that the ALJ improperly gave great weight to the opinions of the non-examining state agency medical consultants because their opinions were based on incomplete medical evidence. In accordance with the regulations, the ALJ considered all medical source opinions of record, including the state agency medical consultants (Tr. 108). *See* 20 C.F.R. § 404.1527 (in effect until March 27, 2017); *see also Reynolds v. Sec'y of Health & Human*

*Servs.*, 707 F.2d 927, 930 (6th Cir. 1983) (ALJ "relied heavily upon the opinion of a review physician" which "the regulations permit" along with a review of the other medical evidence in reaching an independent determination). The state agency medical consultants considered evidence available at the initial and reconsideration levels and opined that Plaintiff could perform a range of light work (Tr. 173-75, 184-86). The ALJ found that these opinions were consistent with the record as a whole (Tr. 108). The ALJ noted that the record contained no opinions from treating physicians (Tr. 108).

Plaintiff correctly notes that the state agency medical consultants did not have access to the entire records when they issued their opinions in February 2014 and May 2014. However, the ALJ considered all evidence in the record, including medical records submitted after the initial and reconsideration levels, in determining that Plaintiff was not disabled before the expiration of her insured status in December 2014 (Tr. 103-09). "[B]efore an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, Case No. 15-1315, 2016 WL 124140, at *7 (6th Cir. Jan. 12, 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). The ALJ did so in this case (Tr. 108).

When considering the state agency medical consultants' opinions, the ALJ noted that Plaintiff reported significant improvement in her condition and her physical examinations continued to be normal through December 2014 (Tr. 108, 406, 430, 468-69, 502, 535, 587-88, 590, 592, 595, 598, 601). The ALJ noted that Plaintiff exhibited no significant limitations in

standing, walking, or sitting upon examination (Tr. 109). The ALJ also considered that EMG testing in July 2014 was negative and Plaintiff discharged herself from physical therapy following significant improvement in her symptoms (Tr. 108, 442, 468, 502). Indeed, in December 2014, Plaintiff reported that her pain was only "2 out of 10" (Tr. 108, 502). The ALJ further noted that Plaintiff testified she had no difficulty walking unless she was carrying something (Tr. 108, 139). The ALJ properly considered that evidence submitted after the initial and reconsideration determinations was consistent the state agency medical consultants' assessment of a light RFC for the relevant period (Tr. 108).

Plaintiff further claims that the ALJ failed to develop the record as to her exertional limitations and should have ordered a consultative examination, contacted her treating physicians, or taken other action to develop the record. However, the record contained numerous medical records and physical examination reports during the relevant period. The ALJ found the evidence sufficient to make a disability determination. Therefore, further development of the record was not warranted. *See Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013) (per curiam) ("Given that the record contained a considerable amount of evidence pertaining to Culp's mental limitations and that Dr. Douglass had completed a mental RFC assessment in March 2008, the ALJ did not abuse her discretion by declining to obtain an additional assessment."); *see also Robertson v. Comm'r of Soc. Sec.*, 513 F. App'x 439 (6th Cir. 2013) (because the record contained test results, physicians' notes, opinion evidence from multiple physicians, and lacked significant inconsistencies in the evidence, the ALJ was not obligated to order a consultative examination with a cardiologist or obtain additional medical records.)

### d.) Consideration of Lay Testimony

Finally, Plaintiff argues that the ALJ erred by not discussing the testimony of her husband. At the Administrative hearing, Plaintiff's husband testified that Plaintiff's back pain varied daily (Tr. 160-61). He stated that Plaintiff would spend days in bed sometimes, but could take care of business and household things at other times (Tr. 161). He stated that Plaintiff home-schooled their son, and their son drove her to most appointments (Tr. 162). He stated that Plaintiff's pain increased in the last three years and she spent more time in bed with the heating pad (Tr. 164).

Although the ALJ did not specifically discuss this evidence in the written decision, the husband's testimony was cumulative of Plaintiff's own testimony. As discussed above, the ALJ articulated numerous reasons for discounting Plaintiff's similar testimony. Thus, any error in failing to discuss the testimony was harmless as the same reasons apply to the husband's testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) ("Although the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such error was harmless given that the lay testimony described the same limitations as Molina's own testimony, and the ALJ's reasons for rejecting Molina's testimony apply with equal force to the lay testimony."); *see also Buckner v. Astrue*, 646 F.3d 549, 559–60 (8th Cir. 2011) ("In the present case, although the ALJ did not expressly address the girlfriend's statement in his decision, the ALJ's error does not require remand [because] . . . the same evidence that the ALJ referred to in discrediting Buckner's claims also discredits the girlfriend's claims.").

### e.) **Application of the Medical-Vocational Guidelines (the "Grid")**

Plaintiff argues that the ALJ failed to discuss the "GRID" rules and should have found her disabled as of her 55th birthday pursuant to Rule 201.06 or 202.06 of the Medical-Vocational Guidelines. However, the Medical-Vocational Guidelines are only applicable at step five of the sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ found that Plaintiff was not disabled at step four of the sequential evaluation process because she retained the capacity to perform her past relevant work as an administrative clerk (Tr. 109). Since the ALJ found that Plaintiff could perform her past relevant work at step four, the ALJ did not proceed to step five and did not need to discuss or apply the Medical-Vocational Guidelines (the Grid). *See* 20 C.F.R. § 404.1520(4) ("The sequential evaluation process is a series of five 'steps' that we follow in a set order."); *see also Smith v. Sec'y of Health and Human Servs*, 893 F.2d 106, 110 (6th Cir. 1989) ("as we have held, the ALJ had substantial evidence for his conclusion that she could perform her past relevant work as an assembler. The Grid is therefore inapplicable to her case"); *Richardson v. Colvin*, Case No. 1:16-cv-01583, 2017 WL 1169702, at *11 (N. D. Ohio, Mar. 3, 2017) ("the ALJ made a proper finding at Step Four that Plaintiff could perform his past relevant work. As such, the grid rules and the transferability of skills are irrelevant.") Accordingly, Plaintiff's step five argument is meritless.

### 2. **A Full and Fair Hearing**

Plaintiff argues that the ALJ denied her right to a full and fair hearing. Specifically, Plaintiff claims that she lacked competent representation at her hearing because her representative did not collect and submit all relevant medical evidence to the ALJ – namely records from one Dr. Homan prior to her onset date of disability; records from Family

Chiropractic beginning October 2014 (two months before her date of last insured on December 31, 2014) through September 2015; and December 2014 records from ophthalmologist Deborah Distefano M.D.

An ALJ has a basic duty to ensure that the hearing is fundamentally fair. *See Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 424-25 (6th Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 401–02 (1971)). However, an ALJ does not have a "special duty to develop the record" when an individual is represented. *See Culp*, 529 F. App'x at 751 (citation omitted).

In this case, the ALJ noted that an attorney and a non-attorney representative, both associated with GAR Disability Associates, had fee agreements with Plaintiff (Tr. 119, 195, 216, 262, 263, 326, 329, 337). Eight days before the hearing, the non-attorney representative requested an adjournment, on GAR letterhead, to procure additional medical evidence (Tr. 119-23, 255). However, the ALJ decided to proceed with the hearing because the non-attorney representative had been representing the Plaintiff since at least February 2014 when Plaintiff signed a fee agreement with the representative.

Plaintiff has not shown that her non-attorney representative was inadequate or that the representative's failings prejudiced her claim. *Cf. Arms v. Gardner*, 353 F.2d 197, 198 (6th Cir. 1965) (per curiam) (representation was inadequate where attorney offered no testimony on claimant's behalf, gave no apparent assistance in the preparation of the case, and admitted he knew very little about Social Security laws.) In the instant case, the representative was experienced in representing claimants in Social Security hearings and offered testimony on Plaintiff's behalf. While the representative did not assist in the collection of records prior to the hearing because Plaintiff had another representative to do that task (who apparently fell short in

obtaining *all* records), the ALJ gave Plaintiff thirty days after the hearing to supplement the

record (Tr. 157, 463-611). Had the ALJ refused to give Plaintiff the thirty days to present

additional evidence, this decision may have been different. However, the ALJ did give Plaintiff

the opportunity to supplement the record and the Plaintiff did so. No explanation is given as to

why the other records Plaintiff asserts are necessary were not submitted within this 30 day time

frame.[1] Nor has Plaintiff argued that not having certain records limited her testimony at the

hearing before the ALJ.

In summation, Plaintiff has not shown any prejudice to her claim or any violation of her

right to a full and fair hearing. It is the Plaintiff's burden to show that that the failure to include

evidence in the record prejudiced the plaintiff or prevented a fair review. *Jones v. Comm'r of*

*Soc. Sec.*, Case No. 1:10-cv-164, 2011 WL 1527159, at * 9 (E.D. Tenn. April 4, 2011) (Lee. J.),

*see also Southard v. Sullivan*, No. 91-3429, 1992 WL 144715, at *1 (8th Cir. June 29, 1992)

(per curiam) (due process claims are meritless absent a showing of prejudice) (citation omitted);

*see also United States Pipe & Foundry Co. v. Webb*, 595 F.2d 264, 274 (5th Cir. 1979) ("To

establish a denial of procedural due process, a party must show substantial prejudice.").

Therefore, this argument also lacks merit.

## III. Conclusion

Having carefully reviewed the administrative record and the parties' briefs filed in

---

[1] The Court notes that Plaintiff does not ask for remand under Sentence Four or Sentence Six of 42 U.S.C. § 405(g).
Plaintiff requests only a reversal and award of benefits (Doc. 10, Plaintiff's brief at 13, 25). Nevertheless, the Court
would not have granted a request for remand under either Sentence Four or Sentence Six had Plaintiff requested it.
The Court finds that the ALJ did not make any procedural errors and the decision is supported by substantial
evidence. Further, the additional evidence Plaintiff asserts should have been included in the record before the ALJ
is not new, Plaintiff has not shown it to be material, and Plaintiff has not shown good cause for failure to include it.
*See Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174-75 (6th Cir. 1991) (discussing standards under
which a claim for benefits can be remanded under Sentence Four or Sentence Six of 42 U.S.C. § 405(g) by the
District Court to the Commissioner for the consideration of additional evidence.)

support of their respective motions, the Court finds the decision of the Commissioner is supported by substantial evidence, and it will be **AFFIRMED.** Accordingly, Plaintiff's Motion for Judgment on the Administrative Record [Doc. 9] shall be **DENIED**; the Commissioner's Motion for Summary Judgment [Doc. 13] shall be **GRANTED;** and judgment in favor of the Commissioner shall be entered.

      **ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE